**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **FREDA M. COEBURN,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00062 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Freda M. Coeburn, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2010).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Coeburn protectively filed her application for SSI on January 6, 2006,[1] alleging disability as of March 23, 2005,[2] based on left knee pain, anxiety, high blood pressure and high cholesterol. (Record, ("R."), at 30, 103, 104-16, 120.) The claim was denied initially and upon reconsideration. (R. at 90-92, 95, 98-100.) Coeburn then requested a hearing before an administrative law judge, ("ALJ"). (R. at 101-02.) The ALJ held a hearing on June 29, 2007, at which, Coeburn was represented by counsel.[3] (R. at 27-63.)

By decision dated July 25, 2007, the ALJ denied Coeburn's claim. (R. at 15-24.) The ALJ found that Coeburn had not engaged in any substantial gainful activity

---

[1]I note that Coeburn filed a previous application for SSI on April 14, 2003, alleging disability as of April 1, 1995, based on hypertension, nerves, headaches, arthritis, back and knee pain, high cholesterol, stomach problems, limited reading ability, anxiety and depression. By decision dated March 22, 2005, the ALJ denied Coeburn's claim. (R. at 29.) The Appeals Council denied her request for review on April 21, 2005. (R. at 15.) Coeburn then filed an action seeking review of the ALJ's unfavorable decision with this court. By order dated January 23, 2006, this court granted the Commissioner's motion for summary judgment and affirmed the final decision of the Commissioner denying benefits. *See Coeburn v. Barnhart,* Civil Action No. 2:05cv00023.

[2]Coeburn reported on her SSI application an alleged date of disability of April 1, 1995. (R. at 105.) However, she amended her alleged onset date of disability to March 23, 2005, at her hearing. (R. at 30.)

[3]The record also contains a hearing transcript for a hearing held on February 3, 2005. (R. at 64-87.)

since January 6, 2006. (R. at 17.) The ALJ found that the medical evidence established that Coeburn had severe impairments, namely chronic left knee pain, secondary to osteoarthritis and cartilage loss, controlled diabetes mellitus, high cholesterol, hypertension, anxiety and borderline intellectual functioning, but she found that Coeburn's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ also found that Coeburn had the residual functional capacity to perform simple, noncomplex light[4] work limited by an inability to climb and to perform pushing or pulling with the left lower extremity and limited to occasionally stooping, balancing, crawling, crouching and kneeling. (R. at 21.) The ALJ found that Coeburn had no past relevant work. (R. at 23.) Based on Coeburn's age, education, lack of work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Coeburn could perform, including light jobs as a dishwasher, a food service worker, an office cleaner and a hotel cleaner. (R. at 23-24.) Thus, the ALJ found that Coeburn was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g) (2009).

After the ALJ issued her decision, Coeburn pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 4-7, 11.) Coeburn then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2009). The case is before this court on Coeburn's motion for summary judgment filed March 9, 2010,

---

[4]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2009).

and the Commissioner's motion for summary judgment filed April 9, 2010.

## *II. Facts*

Coeburn was born in 1953, (R. at 35, 104), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 416.963(d). She has a high school education and no past relevant work experience. (R. at 43, 69-70, 121, 126.) Coeburn testified that she watched up to seven hours of television a day. (R. at 43.)

Norman E. Hankins, a vocational expert, also was present and testified at Coeburn's hearing. (R. at 55-62.) Hankins was asked to consider a hypothetical individual of Coeburn's age, education and background and who was limited to simple, noncomplex, light work that did not require her to push and pull with her left lower extremity, who should never climb, who could balance, kneel, crouch and crawl and occasionally stoop. (R. at 56.) Hankins identified jobs that existed in significant numbers in the national and regional economy that such an individual could perform, including jobs as a dishwasher, a dining room/cafeteria attendant, a food server, a food preparation worker, an office cleaner and a maid. (R. at 57.)

In rendering his decision, the ALJ reviewed records from Lonesome Pine Hospital; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. F. Joseph Duckwall, M.D., a state agency physician; Louis A. Perrott, Ph.D., a state agency psychologist; Julie Jennings, Ph.D., a state agency psychologist; Dr. Fred A. Merkel, D.O.; and Dr. Rob D. Sawyer, D.O. Coeburn's attorney submitted additional medical

reports from Holston Medical Group to the Appeals Council.[5]

The record shows that Dr. Fred A. Merkel, D.O., treated Coeburn for left knee pain, diabetes mellitus, high cholesterol and hypertension from March 2005 through March 2008. (R. at 185-253, 256-57.) In March 2005, an x-ray of Coeburn's left knee showed patella femoral osteoarthritis, as well as osteoarthritis of the knee. (R. at 205, 209.) In August 2005, Coeburn reported that she took Valium for anxiety. (R. at 200.) Dr. Merkel reported that Coeburn appeared to be "a little depressed." (R. at 200.) Coeburn stated that she suffered from depression "off and on but not every day." (R. at 200.) In January 2007, Coeburn reported that she occasionally suffered from depression, but not daily. (R. at 219.) During the time he treated Coeburn, Dr. Merkel reported that her hypertension, gastroesphageal reflux disease, hyperlipidemia and diabetes mellitus were all well-controlled. (R. at 192, 219, 239, 253.)

On November 2, 2005, Coeburn participated in physical therapy at Lonesome Pine Hospital for complaints of left knee pain and stiffness. (R. at 161-63.) Coeburn reported that walking, climbing and stooping increased her pain. (R. at 162.) Danielle M. Lawson, M.P.T., a physical therapist, reported that Coeburn ambulated independently and was in no acute distress. (R. at 162.) Lawson reported that Coeburn had no apparent swelling or effusion of the left knee. (R. at 162.) Lawson reported that Coeburn's signs and symptoms were consistent with osteoarthritis of the left knee. (R. at 162.) On November 4, 2005, an x-ray of Coeburn's left knee showed that the anterior cruciate ligament, posterior cruciate ligament and medial collateral

---

[5]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 4-7), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

ligament were intact.  (R. at 196.) The x-ray also showed cartilage loss.  (R. at 197.)

On March 14, 2006, Dr. Richard M. Surrusco, M.D., a state agency physician, reported that Coeburn had the residual functional capacity to perform medium[6] work. (R. at 164-69.) He reported that Coeburn was limited in her ability to push and/or pull with her left lower extremity. (R. at 165.) Dr. Surrusco reported that Coeburn could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 166.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 166-67.) This assessment was affirmed by Dr. F. Joseph Duckwall, M.D., another state agency physician, on September 7, 2006.  (R. at 168.)

On March 14, 2006, Louis A. Perrott, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Coeburn suffered from a nonsevere anxiety-related disorder. (R. at 170-82.) Perrott reported that Coeburn had no limitations on her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace and that she had not experienced any episodes of decompensation. (R. at 180.) This assessment was affirmed by Julie Jennings, Ph.D., another state agency psychologist, on September 7, 2006.  (R. at 170.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20

---

[6]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2009).

C.F.R. § 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 25, 2007, the ALJ denied Coeburn's claim. (R. at 15-24.) The ALJ found that the medical evidence established that Coeburn had severe impairments, namely chronic left knee pain, secondary to osteoarthritis and cartilage loss, controlled diabetes mellitus, high cholesterol, hypertension, anxiety and borderline intellectual functioning, but she found that Coeburn's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ also found that Coeburn had the

residual functional capacity to perform simple, noncomplex light work limited by an inability to climb and to perform pushing or pulling with the left lower extremity and limited to occasionally stooping, balancing, crawling, crouching and kneeling. (R. at 21.) Based on Coeburn's age, education, lack of work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Coeburn could perform, including light jobs as a dishwasher, a food service worker, an office cleaner and a hotel cleaner. (R. at 23-24.) Thus, the ALJ found that Coeburn was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g).

Coeburn argues that the ALJ's determination of her residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-9.) Specifically, Coeburn argues that the ALJ erred by failing to order a consultative exam to determine the effects of her mental impairments on her work-related abilities. (Plaintiff's Brief at 6-8.) She further argues that the ALJ's hypothetical question posed to the vocational expert did not accurately portray her limitations as found by the ALJ. (Plaintiff's Brief at 8-9.)

The ALJ in this case found that Coeburn had the residual functional capacity to perform simple, noncomplex light work. (R. at 21.) Based on my review of the record, I find that substantial evidence exists to support this finding. The ALJ noted that, although the objective medical evidence, treatment history and Coeburn's daily activities and background did not support her allegations of disabling mental limitations, she gave Coeburn every benefit of the doubt by limiting her to simple, noncomplex tasks. (R. at 21.)

Dr. Merkel, Coeburn's primary care physician, prescribed Valium for her complaints of anxiety, but did not refer her for counseling. (R. at 192, 200, 202, 210.) Coeburn received no specialized mental health treatment and had no psychiatric hospitalizations. In August 2005, Dr. Merkel reported that Coeburn appeared to be "a little depressed." (R. at 200.) However, Coeburn reported that she only suffered from depression "off and on, but not every day." (R. at 200, 219.)

Coeburn further argues that the record indicates additional evidence not included in the record on appeal. (Plaintiff's Brief at 6.) Coeburn notes that her former counsel prepared a letter[7] to the ALJ noting "[a]s part of her previous claim, the claimant underwent a psychological evaluation by Dr. Lanthorn. Testing at that time showed the claimant to suffer from borderline intellectual functioning with a Full Scale IQ of 72." (Plaintiff's Brief at 6.) As noted above, Coeburn filed a prior claim with this court. At that time, Lanthorn's assessment was part of the record before the court. (*See Coeburn v. Barnhart*, 2:05cv00023, Report and Recommendation, Docket Item No. 15, ("R&R"), at 5-6.) Lanthorn evaluated Coeburn in February 2004. (R&R at 5.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Coeburn obtained a verbal IQ score of 72, a performance IQ score of 76 and a full-scale IQ score of 72. (R&R at 5.) Lanthorn diagnosed borderline intellectual functioning. (R&R at 5.) Lanthorn reported that Coeburn was "judged to have, at worse, only mild limitations in her overall adaptability skills." (R&R at 6.) Lanthorn made these findings despite having reported that he considered Coeburn to be in the borderline range of intellectual functioning.

---

[7]This letter is dated June 29, 2007, and signed by Sue Ella Kobak. (R. at 158-60.)

In addition, the state agency psychologists found that Coeburn suffered from a nonsevere anxiety-related disorder. (R. at 170-82.) Furthermore, the record shows that Coeburn completed high school in regular classes. (R. at 126.) Coeburn reported that she could read and write in English and that she paid the bills. (R. at 74, 119.) In fact, she reported that she read and understood books on diabetes and that she did not need reminders to take care of her personal needs, including taking her medications. (R. at 131, 185.) Based on this, I find that substantial evidence exists to support the ALJ's mental residual functional capacity finding and that the ALJ did not err by failing to order a consultative examination to determine the effects Coeburn's borderline intellectual functioning would have on her work-related abilities.

Coeburn further argues that the ALJ's hypothetical question posed to the vocational expert did not accurately portray her limitations as found by the ALJ. (Plaintiff's Brief at 8-9.) The state agency physicians found that Coeburn could perform medium work and that she could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 164-69.) The vocational expert was asked to consider an individual who could occasionally stoop, but otherwise balance, kneel, crouch and crawl on a regular basis. (R. at 56.)

Social Security Ruling 85-15 states that stooping, kneeling, crouching and crawling are progressively more strenuous forms of bending parts of the body. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Social Security Ruling 83-14 states that most light jobs require no crouching and only occasional stooping. *See* S.S.R. 83-14, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Similarly, Social Security Ruling 85-15 notes that some stooping, which is defined as bending the body

downward and forward by bending the spine at the waist, is required to do almost any kind of work. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. If a person can stoop occasionally, which is defined as from very little up to one-third of the time, the sedentary and light occupational base is virtually intact. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. This also is true for crouching, which is defined as bending the body downward and forward by bending both the legs and spine. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. Crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. This also is true of kneeling, which is defined as bending the legs at the knees to come to rest on one or both knees. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991.

Here, the jobs previously enumerated by the vocational expert all were at the light level of exertion. (R. at  at 56-57.) That being said, it is clear that the ALJ's restricting Coeburn to the performance of light work took into account the postural limitations identified by the state agency physicians.

For all of these reasons, I find that substantial evidence does exist in the record to support the ALJ's residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1.   Substantial evidence exists to support the ALJ's finding with regard to Coeburn's physical residual functional capacity;

2.   Substantial evidence exists to support the ALJ's finding with regard to Coeburn's mental residual functional capacity; and

3.   Substantial evidence exists to support the ALJ's finding that Coeburn was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Coeburn's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    This 22nd day of July 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE